UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00108-GNS

NATHANIEL EDWARD MAYSEY                                         PLAINTIFF

v.

NEMAK USA INC.                                                  DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion to Alter and Amend the Judgment filed by (DN 194). The motion is ripe for adjudication.

**I.      STATEMENT OF FACTS AND CLAIMS**

Plaintiff Nathaniel Edward Maysey ("Maysey") was injured in 2016 while working for Magna-Tech Manufacturing ("Magna-Tech") at a plant in Glasgow, Kentucky, owned by Nemak.[1] (*See* Troyer Dep. 100:6-12, Nov. 30, 2017, DN 173-2). Nemak casts aluminum automobile components. (Second Am. Compl. ¶ 6, DN 93). Henkel is the parent corporation of Magna-Tech, which operated "impregnation machines" within the Nemak facility pursuant to a Service Agreement between Nemak and Magna-Tech. (Second Am. Compl. ¶¶ 10-11(A); Def.'s Mot. Summ. J. Ex. 1, DN 134-2). Maysey lost his arm while operating a centrifuge on Line 46, which was part of the impregnation process, as the result of the deactivation of a safety device on the machine. (Morley Dep. 26:3-14, 31:16-21, Oct. 10, 2017, DN 170-15). The safety lid for the

---

[1] Maysey worked for Magna-Tech through a service agency, Express Services, Inc. ("Express"). (Second Am. Compl. ¶ 3, DN 93). Third-party claims against Magna-Tech and Express were dismissed due to the exclusive remedies provision of the Kentucky Worker's Compensation Act. (Order, DN 124).

impregnation machine was bypassed and the machine was allowed to operate with the lid up, rather than down. (*See* Second Am. Compl. ¶ 11(C)(4)). Maysey filed suit against Henkel, as the parent of Magna-Tech, and Nemak USA, as owner of the plant where Maysey was injured. (*See generally* Second Am. Compl.). The Court denied Defendant Nemak's and granted Defendant Henkel's motions for summary judgment. (Mem. Op. & Order 20, DN 191). Maysey then moved to alter the judgment in favor of Henkel. (Pl.'s Mot. Alter & Amend, DN 194).

## II. JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1). Venue is proper as the nucleus of events occurred in Glasgow, Kentucky.

## III. DISCUSSION

### A. Motion to Alter or Amend Judgment

Under Fed. R. Civ. P. 59(e), "[a] district court may alter or amend its judgment based on '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 841 (6th Cir. 2018) (citation omitted). "A Rule 59 motion, however, may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Id.* (internal quotation marks omitted) (citation omitted).

Maysey's motion alleges no clear error of law, newly discovered evidence, intervening change in law, nor the potential for manifest injustice. Effectively, the motion merely undertakes to rehash the arguments made before the Court in deciding the motion for summary judgment. (*See generally* Pl.'s Mem. Supp. Mot. Alter & Amend, DN 194-1). Maysey states that under the Restatement (Second) of Torts § 324A, if a party voluntarily undertakes a duty to provide services

to another, he is liable for any physical harm stemming from the neglect of said duty. (Pl.'s Mem. Supp. Mot. Alter & Amend 8). The Court's Order addressed the Restatement (Second) of Torts § 324A and identified it as a governing principle, which Maysey failed to do in his initial motion for summary judgment and responses. (Mem. Op. & Order 5-6). The Court's Order found that Henkel had not undertaken a duty to provide safety services to Magna-Tech's employees within the meaning of Section 324A. (Mem. Op. & Order 11). To support his assertion that Henkel owed such a duty, Maysey cites to *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655 (6th Cir. 1979) contending that Henkel had "provided management, engineering and safety services for Magna-Tech." (Pl.'s Mem. Supp. Mot. Alter & Amend 7). The Court addressed *Boggs* at numerous points throughout its Order, holding that *Boggs* did not support Maysey's contention that Henkel assumed safety management for its subsidiary, Magna-Tech. (*See, e.g.*, Mem. Op. & Order 3-5, 7, 11). Maysey does not identify any caselaw that has been published in the interim that would stand in opposition to the Court's interpretation of *Boggs*.

Furthermore, the decisions Maysey does cite to address whether Henkel assumed a duty to ensure the safety of Magna-Tech's employees were already thoroughly addressed by the Court's Order. For example, Maysey cites *Gaines v. Excel Industries, Inc.*, 667 F. Supp. 569, 574 (M.D. Tenn. 1987), for the proposition that summary judgment should be denied where the parent performed safety inspections of the subsidiary worksites. (Pl.'s Mem. Supp. Mot. Alter & Amend 8-9). The Court's Order addressed *Gaines*, stating that summary judgment in that case was denied because "questions of fact remained as to whether the parent company undertook the safety inspections, audits, and reviews primarily for its own benefit or for the benefit of the subsidiary or the subsidiary's employees." (Mem. Op. & Order 6).

Maysey also addresses *Hinkle v. Delavan Industries, Inc.*, 24 F. Supp. 2d 819, 821 (W.D. Tenn. 1998), which was analyzed in the Court's Order. (Pl.'s Mem. Supp. Mot. Alter & Amend 9-10; Mem. Op. & Order. 4, 6). Maysey states that in contrast to the parent and subsidiary relationship in *Gaines*, the parent in *Hinkle* was materially different from Magna-Tech and Henkel's relationship because the parent in *Hinkle* maintained an interest in the safety of its subsidiary as a way to reduce worker's compensation costs. (Pl.'s Mem. Supp. Mot. Alter & Amend 9-10). Henkel conducted one site visit *before it purchased* Magna-Tech as a subsidiary, undermining allegations of responsibility to ensure the safety of a premises not yet owned by Henkel and conducted a second site visit to "get a general impression" and "[t]o verify and scope the due diligence items for the business so they could scope a budget for remediation." (Sharron Dep. 76:19-22, DN 173-7; Drzewiecki Dep. 114:20-22, DN 173-8; Mem. Op. & Order 8). The Court found that Henkel's site visits were not done for the purpose of ensuring the safety of the Magna-Tech employees, but rather were performed from the perspective of a parent corporation's understanding of its subsidiary, thus for the parent's own benefit. (Mem. Op. & Order 7-10). Maysey makes no new argument of fact or law which undermines the Court's Order.

As Henkel points out, the only case Maysey cites which was not referenced in the Court's Order is *Ostendorf v. Clark Equipment Co.*, 122 S.W.3d 530 (Ky. 2003), which Maysey notes only for the circumstances in which a duty may be imposed giving rise to a claim of negligent performance under Section 324A of the Restatement (Second) of Torts. (Pl.'s Mem. Supp. Mot. Alter & Amend 8). Maysey neither makes any argument regarding the substance of *Ostendorf*, nor does he cite any other decisions not addressed by the prior order. As factual support that Henkel assumed a duty for safety towards Magna-Tech's employees, Maysey points to Henkel's March 2016 assessment of Magna-Tech's facility and asserts that machine guarding deficiencies

were identified on Line 46, where Maysey was injured. (Pl.'s Mem. Supp. Mot. Alter & Amend 4-5). As the Court's Order discussed, the record reflects that Line 46 was not in operation at the time of the 2016 site visit. (Mem. Op. & Order 8). Further, the Court's Order noted that "any repair or service type work on Magna-Tech equipment is managed by Magna-Tech, typically through contracted resources." (Mem. Op. & Order 9 (alteration omitted) (quoting Def.'s Mot. Summ. J. Ex. I, at 21, DN 173-9) (citing Drzewiecki Dep. 134:16-24-135:1-15, DN 134-9)). Maysey points to no facts or law or which were not addressed by the Court's prior Order.

Maysey has identified no clear error of law, newly discovered evidence, change in controlling law, nor any manifest injustice. Accordingly, the motion is denied.

**B.      Immediate Appeal**

Final judgment as to Maysey's claims against Henkel will be entered pursuant to Fed. R. Civ. P. 54(b), allowing for immediate appeal. *See* Fed. R. Civ. P. 54(b) ("[W]hen multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, . . . parties only if the court expressly determines that there is no just reason for delay."); *see also Corrosioneering, Inc. v. Thyssen Env't Sys., Inc.*, 807 F.2d 1279, 1282 (6th Cir. 1986) ("Rule 54(b) provides a means by which a district court may release for immediate appeal final decisions resolving 'one or more but fewer than all of the claims or parties' in a multiple-claim or multiple-party action . . . ." (citations omitted)). There is "no just reason for delay" where an issue is "separate and distinct" from the issues remaining in the case. *Corrosioneering*, 807 F.2d at 1283. Courts should also consider other factors such as "the relationship between the adjudicated and unadjudicated claims" and "the possibility that the need for review . . . might not be mooted by future developments in the district court." *Id.* (internal quotation marks omitted) (citation omitted).

Courts should also consider "judicial administrative interests." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980).

In this matter, the claims against Henkel are separate and distinct from those that remain against Nemak. Although both parties assert they have immunity from suit based on the Kentucky Worker's Compensation Act, the theories are premised upon distinct legal questions and factual scenarios. Henkel's immunity is based upon its status as a parent company to a subsidiary which has provided workmen's compensation, whereas Nemak argues its immunity is based upon "up-the-ladder immunity." (Mem. Op. & Order 3, 14). These separate and distinct claims raise different legal questions and require separate factual findings, such that rendering this judgment final will not result in duplicative appeals.

The relationship of the claims and the potential for mootness further demonstrate that there is no just reason for delay in rendering final judgment. The claims involved in this matter bear no relationship that makes one dependent upon another. Additionally, any further developments regarding the remaining claims against Nemak would have no impact upon the claims against Henkel, as they are not premised upon any relationship or connection to Nemak. Judicial administrative interests also counsel in favor of rendering a final judgment because a determination on the matter could facilitate settlement and limit the issues presented at trial. *See Curtiss-Wright*, 446 U.S. at 8 n.2; *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987). It would also prevent burdening the jury pool with two separate trials, should the appellate court reverse the grant of summary judgment in favor of Henkel.

For these reasons, the Court will enter final judgment and a certificate of appealability on Maysey's claims pursuant to Fed. R. Civ. P. 54(b) to afford him the right immediately to appeal

6

this Court's determination that Henkel is entitled to summary judgment in its favor. The Court will also stay this case pending appeal.

## IV. CONCLUSION

For the reasons outlined above, **IT IS HEREBY ORDERED** that Maysey's Motion to Alter or Amend the Judgment (DN 194) is **DENIED**. This matter is **STAYED** pending appeal.

Greg N. Stivers, Chief Judge
United States District Court

October 17, 2022

cc: counsel of record